# EXHIBIT A

[redacted]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

PARAGON 28, INC. and DISIOR OY,

Plaintiffs,

v.

TREACE MEDICAL CONCEPTS, INC. and MIOS MARKETING, LLC d/b/a REDPOINT MEDICAL3D.

Defendants.

Civil Action No. 25-1092-GBW

[redacted]

---

**MEMORANDUM ORDER**

Pending before the Court is a Motion to Compel Trade Secret Disclosures filed by Defendant Treace Medical Concepts, Inc. ("Treace") and Defendant MIOS Marketing, LLC d/b/a Redpoint Medical3D ("RedPoint") (collectively, "Defendants"), which has been fully briefed. D.I. 85; D.I. 89. Defendants seek an Order compelling Paragon 28, Inc. ("P28") and Disior Oy ("Disior") (collectively, "Plaintiffs") to supplement their response to RedPoint's Interrogatory No. 1 "to identify their alleged trade secrets with the requisite reasonable particularity." D.I. 85 at 1. For the following reasons, the Court grants-in-part and denies-in-part Defendants' Motion to Compel.

## I. LEGAL STANDARDS

Pursuant to Federal Rule of Civil Procedure 37, "a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1); *see also* D. Del. LR 7.1.1 (requiring the movant to make "a reasonable effort . . . to reach agreement with the opposing party").

"An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed. R. Civ. P. 33(a)(2). Under Rule 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1).

Under Rule 33(d), "[i]f the answer to an interrogatory may be determined by examining, auditing, compiling, abstracting, or summarizing a party's business records (including electronically stored information), and if the burden of deriving or ascertaining the answer will be substantially the same for either party, the responding party may answer by . . . specifying the records that must be reviewed, in sufficient detail to enable the interrogating party to locate and identify them as readily as the responding party could . . . ." Fed. R. Civ. P. 33(d).

## II. DISCUSSION[1]

As a preliminary matter, the Court recognizes that the issues identified in the parties' briefing are common in trade secret litigation. *See, e.g.*, *InteliClear, LLC v. ETC Glob. Holdings, Inc.*, 978 F.3d 653, 662 (9th Cir. 2020) ("Federal cases analyzing whether a plaintiff's trade secrets are described with 'sufficient particularity' typically arise in the battleground of discovery. In such cases, discovery provides an iterative process where requests between parties lead to a refined and sufficiently particularized trade secret identification." (citations omitted)). As one district court has summarized with respect to an analogous dispute:

[1] The Court writes for the benefit of the parties and assumes their familiarity with the case.

> This discovery impasse is not uncommon in trade secret cases, and brings into conflict many competing policies. For example, courts have identified at least three policies which support allowing the trade secret plaintiff to take discovery prior to identifying its claimed trade secrets. First, courts have highlighted a plaintiff's broad right to discovery under the Federal Rules of Civil Procedure. Second, the trade secret plaintiff, particularly if it is a company that has hundreds or thousands of trade secrets, may have no way of knowing what trade secrets have been misappropriated until it receives discovery on how the defendant is operating. Finally, if the trade secret plaintiff is forced to identify the trade secrets at issue without knowing which of those secrets have been misappropriated, it is placed in somewhat of a "Catch-22." Satisfying the requirement of detailed disclosure of the trade secrets without knowledge [of] what the defendant is doing can be very difficult. If the list is too general, it will encompass material that the defendant will be able to show cannot be trade secret. If instead it is too specific, it may miss what the defendant is doing.

*DeRubeis v. Witten Techs., Inc.*, 244 F.R.D. 676, 680 (N.D. Ga. 2007) (cleaned up); *see also Oakwood Lab'ys LLC v. Thanoo*, 999 F.3d 892, 907 (3d Cir. 2021) (citing *DeRubeis* affirmatively).

Due to these conflicting considerations, the Third Circuit has emphasized that "whether a plaintiff has sufficiently disclosed its trade secrets is a fact-specific question to be decided on a case-by-case basis." *Oakwood*, 999 F.3d at 906 (internal marks omitted). The degree of specificity required depends upon both the subject industry and the stage of litigation. *See Mallet & Co. Inc. v. Lacayo*, 16 F.4th 364, 382 n.22 (3d Cir. 2021) ("District courts must therefore engage with the specific facts of the case and consider the degree of specificity necessary in light of the particular industry-based context and the stage of litigation – whether that be a motion to dismiss, a discovery dispute, a motion [for a preliminary injunction], or a summary judgment motion." (citation omitted)). "At a minimum, the subject matter of the trade secret must be described with sufficient particularity to separate it from matters of general knowledge in the trade or of special knowledge of those persons who are skilled in the trade, and to permit the defendant to ascertain at least the boundaries within which the secret lies." *Id.* at 382 (cleaned up).

The Court considers the parties' arguments against that backdrop. Defendants move to compel Plaintiffs to supplement their response to RedPoint's Interrogatory No. 1, which instructs Plaintiffs to "describe with specificity" all trade secrets that Plaintiffs refer to in the Amended Complaint. D.I. 86-1 at 6. Plaintiffs have provided an initial and supplemental response to that interrogatory. *See id.* at 6, 13. In the latter, Plaintiffs state that their trade secrets include but are not limited to, *inter alia*:

- "[redacted]; and/or . . ."
- "[redacted] and/or . . ."
- "[redacted] and/or . . ."
- "[redacted]."
- "[redacted] . . ."
- "[redacted] . . . ."
- "[redacted] and . . ."
- "[redacted]."

*Id.* at 14–16. Defendants contend that this response is not sufficiently specific because "the alleged trade secrets are ***the entire Bonelogic product***," and Plaintiffs have not distinguished the allegedly secret aspects of their product from those that are in the public domain. D.I. 85 at 2–3 (emphasis in original). Plaintiffs reply that (1) discovery is in its early stages, (2) Plaintiffs are not required to identify trade secrets with particularity at this stage, and (3) Plaintiffs' trade secret identification

is adequate because they "do not claim broad functional concepts as trade secrets; they claim their proprietary implementations of those functions in the Bonelogic code." D.I. 89 at 1–3. For the reasons set forth below, the Court finds that Plaintiffs' supplemental response requires clarifications.

### A. Except for the Need to Clarify Certain Contradictions, Plaintiffs' Supplemental Response to RedPoint's Interrogatory No. 1 Is Sufficient.

At the outset, the Court finds that Plaintiffs' identification of their trade secrets is fairly narrow. Plaintiffs expressly disclaim that their alleged trade secrets include "broad functional concepts." *Id.* at 3. Instead, Plaintiffs' alleged trade secrets appear to primarily include only the actual code comprising the modules they describe.[2] In other words, most of the listed trade secrets do not include different software implementations that perform analogous functions. Plaintiffs' trade secret identification also includes workflows facilitating user interactions with the Bonelogic software and data generated by Defendants in using the software, but those items do not appear to be the focus of the current discovery dispute.

The fact that Plaintiffs primarily identify trade secret code, not functionality, distinguishes this case from *FemtoMetrix, Inc. v. Huang*, Case No. 8:22-cv-01624-CJC-KES, 2023 WL 6786776, at *2-3 (C.D. Cal. Sept. 8, 2023), which Defendants cite for the proposition that "merely identifying software module names is an insufficient disclosure of alleged trade secrets." D.I. 85 at 2. In *FemtoMetrix*, the plaintiff claimed functionality as a trade secret and did not indicate what

[2] The Court finds Plaintiffs' insistence that their trade secret claim is limited to their code difficult to reconcile with the allegations of the Amended Complaint. According to the Amended Complaint, Defendants did not have access to the server-side source code implementing the algorithms that perform the critical functions of the Bonelogic software, *see* D.I. 21 at 6–7. Instead, Plaintiffs' theory of misappropriation stems from Defendants' alleged reverse engineering of the "trade secret algorithms" (as opposed to code) that form the "'solver' functionality" of the Disior Software. *Id.* at 13–14. However, the Court accepts the Plaintiffs' representations in their supplemental response and briefing and rules accordingly.

code comprised the allegedly secret "modules." *FemtoMetrix*, 2023 WL 6786776, at *2. Here, in contrast, Plaintiffs are not claiming the functionality of their modules as secret, but instead, the code. *See* D.I. 89 at 2-3. Moreover, Plaintiffs have offered to show that code to Defendants and identify the directories and files that correspond to the named modules. *See* D.I. 86-1 at 16. Therefore, the concerns that the court identified in *FemtoMetrix* are not present in the instant dispute.

*Mednet Sol'ns, Inc. v. Jacobson*, Case No. 20-cv-2502 (DSD/JFD), 2021 WL 6931589 (D. Minn. Sept. 16, 2021), which Defendants cite repeatedly, is also distinguishable. The court in *Mednet* applied a very high standard for initial trade secret disclosure: "A plaintiff must describe its trade secrets [at the outset of discovery] with the same specificity expected at summary judgment or trial." *Id.* at *2. That standard sharply contrasts the funnel approach suggested by the Third Circuit in *Mallet*, whereby the degree of specificity required in trade secret identification increases as the litigation progresses. *See Mallet*, 16 F.4th at 382 n.22. This Court is bound by *Mallet*, and its approach better accounts for the "Catch-22" outlined above. Where, as here, a plaintiff asserts trade secrets enshrined in "tens of thousands of lines of code," D.I. 21 at 7, it may be impossible for the plaintiff to narrow its identification of trade secrets at the outset "when only discovery will reveal exactly what the defendants are up to." *Oakwood*, 999 F.3d at 907. Thus, Defendants' arguments based on *Mednet* are unpersuasive.

Defendants further rely on then-Magistrate Judge Hall's report and recommendation in *YouMap v. Snap Inc.*, C.A. No. 20-162-CFC, 2021 WL 3171838 (D. Del. July 27, 2021). In *YouMap*, Judge Hall recommended requiring the plaintiff to identify its alleged trade secrets in detail "before it is permitted to obtain discovery of any of Defendants' confidential proprietary information." *Id.* at *9 n.10. However, the context of that case was very different than the present

dispute. *First*, Judge Hall was addressing a motion to dismiss, not a discovery dispute. *Id.* at *1. *Second*, the plaintiff's identification of its trade secrets in *YouMap* was extremely vague, referring generally to the "system/method/process and software algorithms" comprising various functionalities. *Id.* at *3. *Third*, in light of the plaintiff's extremely vague identification of its trade secrets in *YouMap*, Judge Hall's recommended requirement that plaintiff identify its trade secrets "in detail" may well have been satisfied by the level of disclosure provided by Plaintiffs here. *Id.* at *9 n.10. Thus, Defendants' contentions based on *YouMap* are unavailing.

The Court is also not persuaded by Defendants' position that Plaintiffs' trade secret identification is overinclusive because it may include open-source code. *See* D.I. 85 at 2. As Plaintiffs correctly point out, "information will not necessarily be deprived of protection as a trade secret because parts of it are publicly available. A confidential compilation and organization of public information can amount to a trade secret." *Mallet*, 16 F.4th at 386. Moreover, Plaintiffs' counsel's tentative acknowledgment that the modules "may" contain open-source or third-party software is not a definitive admission that any portion of the modules is not a trade secret. D.I. 85 at 2. Plaintiffs currently represent that all the code in the described modules is a trade secret. *See* D.I. 86-1 at 14. Plaintiffs' ability to prove that remains to be seen, but that is a merits issue to be decided at a later time. At this early stage of discovery, Plaintiffs' identification of discernable code for specific modules performing specific functions in their software is sufficient, notwithstanding the need to clarify contradictions in their briefing, discussed below.

### B. Plaintiffs Must Supplement Their Response to RedPoint's Interrogatory No. 1 to Clarify Their Identification of Client-Side Versus Server-Side Code.

While the Court finds that Plaintiffs' response to RedPoint's Interrogatory No. 1 is largely sufficient, it grants Defendants' motion in part because Plaintiffs have made contradictory statements that necessitate clarification. In their responsive letter brief, Plaintiffs dispute that their

trade secret identification includes "the entire Bonelogic product," contending that "**[t]he asserted trade secrets do not include . . . server-side Bonelogic code.**" D.I. 89 at 1 n.2 (emphasis added). The Court observes that the broadest language in Plaintiffs' trade secrets identification is not limited to client-side code. It refers simply to "code," which facially includes server-side code. D.I. 86-1 at 14. That distinction appears important because Plaintiffs insist in their Amended Complaint that "P28's Trade Secrets are and have always been maintained on Disior servers . . . . The Disior Software runs on Disior's servers and third-party users of the Disior Software," presumably including Defendants, "have never been allowed access to the software code or algorithms." D.I. 21 at 7. Moreover, Plaintiffs stated that "[t]he critical technology that forms the foundation of the Disior Software includes its 'solver' functionality," D.I. 21 at 6, part of the "'Analysis Solution' Software Module," D.I. 86-1 at 15, which comprises code that "ha[s] always been located on Disior's internal server." D.I. 21 at 7. Thus, the extent to which Plaintiffs allege misappropriation of server-side versus client-side code is non-trivial.

Plaintiffs must supplement their response to resolve this issue. If Plaintiffs intend to limit their trade secret identification to client-side code, as their brief suggests, they must state that explicitly in their supplemental response. Furthermore, given Plaintiffs' indication that at least part of their allegedly trade secret module code is server-side, *see* D.I. 21 at 7, Plaintiffs must clarify what functions the client-side code performs and exclude functions only performed server-side to give Defendants a fair opportunity to identify relevant functionality in their own software. Alternatively, if Plaintiffs intend to include server-side code in their trade secret identification, Plaintiffs must state that explicitly and clarify what functions that code performs. Either way, Plaintiffs must supplement their response to RedPoint's Interrogatory No. 1.

Meanwhile, Defendants must continue to comply with their discovery obligations as Rule 26 demands. Once Plaintiffs clarify this issue, Defendants should have sufficient information to provide discovery of their relevant code. The Court appreciates Defendants' concern for confidentiality, but there is a Protective Order in place to mitigate that concern. D.I. 73. If Defendants feel that the Protective Order is inadequate, they may move to amend it.

## III. CONCLUSION

For the foregoing reasons, the Court grants-in-part and denies-in-part Defendants' Motion to Compel (D.I. 85).

* * * * *

WHEREFORE, at Wilmington this 18th day of September 2026, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Compel Trade Secret Disclosures is **GRANTED** insofar as it seeks to clarify whether Plaintiffs are alleging trade secrets in either Disior's server-side code or client-side code, or both. Plaintiffs shall, within 14 days, provide an additional supplemental response to RedPoint's Interrogatory No. 1, clarifying whether Plaintiffs' trade secret identification includes code on the server-side and what functions its asserted trade secret code performs, as described above. Otherwise, Defendant's Motion is **DENIED.**
2. Because this Memorandum Order is filed under seal, the parties shall meet and confer and, no later than twenty-one (21) days after entry of this Memorandum Order, submit a joint proposed redacted version of this Memorandum Order accompanied by a supporting memorandum, detailing how, under applicable law,

the Court may approve any requested redactions. In the absence of a timely, compliant request, the Court will unseal the entire Memorandum Order.

GREGORY B. WILLIAMS
UNITED STATES DISTRICT JUDGE